UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RICKY DEAN HARDEE, ) | |
| ) | |
| Petitioner, ) | Case No. 3:07mc64-MU |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## PETITION TO QUASH IRS' SUMMONS

COMES NOW THE PETITIONER, Ricky D. Hardee ("Hardee"), by and through his attorneys, Bernhoft Law Firm, S.C., (Attorney Robert E. Barnes, *pro hac vice* application pending), and respectfully petitions this Court to quash a certain Internal Revenue Service Summons issued by the Department of the Treasury Internal Revenue Service. The Summons seeks records from a Third-Party Recordkeeper regarding internal revenue matters allegedly involving the Petitioner.

## INTRODUCTION

This IRS' summons is unsuited for this court's judicial imprimatur for three independent reasons: first, the summons solely seeks to acquire evidence in support of a criminal prosecution and solicits information in aid of a formal grand jury inquiry already convened in the state of Florida concerning investigation into the entities at issue here; second, the summons perpetuates a consistent pattern of impermissible harassment by the IRS Criminal Investigation Division special agent, who illicitly disclosed to the petitioner's customers, employees and lenders that petitioner is under criminal investigation, in direct violation of 26 U.S.C. § 6103; and third, the special agent apparently failed to make the required summons attestation.

1

## JURISDICTION

The instant Petition is filed pursuant to 26 U.S.C. § 7609(b)(2), and this Court has subject matter jurisdiction over this proceeding under 26 U.S.C. § 7609(h).

## PARTIES

1. The Petitioner, Ricky D. Hardee ("Hardee"), resides at 4531 Montibello Drive, Charlotte, North Carolina 28226.

2. The Respondent, United States of America, and its agent, the Department of the Treasury Internal Revenue Service ("IRS"), has its offices at 6635 Executive Circle, Suite 180, Charlotte, North Carolina 28212.

## FACTUAL BACKGROUND

3. On May 10, 2007, the Internal Revenue Service ("IRS") issued a Summons, a true and correct copy of which is attached to the Declaration of Robert E. Barnes (hereinafter "Barnes Decl.") as Exhibit A filed in support of this Petition, directing First Charter, located at 10200 David Taylor Drive, Charlotte, North Carolina 28262, to appear and produce a multiplicity of records and documents allegedly relating to the petitioner Hardee in an inquiry concerning Hope Masonry.

4. On May 14, 2007, the Internal Revenue Service ("IRS") issued a Summons, a true and correct copy of which is attached to the Barnes Decl. as Exhibit B filed in support of this Petition, directing Cynthia Bryant (hereinafter "Bryant"), located at 2801 West Tyvola Road, Charlotte, North Carolina 28217, to appear and produce a multiplicity of records and documents allegedly relating to the petitioner Hardee in an inquiry concerning Hope Masonry.

5. On May 9, 2007, the Internal Revenue Service ("IRS") issued a Summons, a true and correct copy of which is attached to the Barnes Decl. as Exhibit C filed in support of this Petition, directing Belks, located at Belks 2801 West Tyvola Road, Charlotte, North Carolina

2

28217, to appear and produce a multiplicity of records and documents allegedly relating to the petitioner Hardee in an inquiry concerning Hope Masonry.

6. Hardee was previously subject to a civil collection audit. The Revenue Agent's digitized, computer-entered notes indicated that a "CI Agent" was involved in the case and the Revenue Agent communicated with this "CI Agent". Upon information and belief, this refers to an IRS Criminal Investigation special agent. The relevant section of the Revenue Agent's digitized notes is attached to the Barnes Decl. as Exhibit E.

7. On November 7, 2006, a revenue agent out of South Carolina issued a summons to Wachovia Bank for records related to Hope Masonry Contractors, seeking information from 1996 to the present.

8. Upon information and belief, the Internal Revenue Service has a formal referral in place against Michael Beiter, the listed agent for Mikva Management & Leasing ("Mikva"), an identified owner of Hope Masonry Contractors, concerning tax and money-laundering allegations against Beiter and others, and the Department of Justice formally authorized a grand jury to investigate in Florida. (Barnes Decl., ¶ 8.)

9. On November 22, 2006, Hardee petitioned to quash a summons seeking some of the same kind of information the IRS demands herein. *Hardee v. United States*, 3:06-mc-00425 (W.D.N.C.), Doc. 1.

10. On January 17, 2007, after seeking and receiving an extension to answer, the government summarily withdrew the summons and moved for dismissal on grounds the petition was moot. *Id.*, Doc. 8. The court granted the request on January 18, 2007. *Id.*, Doc. 9.

11. On or about May 9, 2007, IRS Criminal Investigation Special Agent Ripley informed banks, customers, friends, and others whom the agent knew Hardee relied upon for his business that the petitioner was under criminal investigation. At that time, Special Agent Ripley

3

had not offered Hardee the alternative of providing the records requested herein without any such disclosure. (Barnes Decl., ¶ 9.)

12. On or about May 9, 2007, Special Agent Robert F. Ripley ("Agent Ripley") delivered the summons, along with nineteen other summonses to various third parties, to Hardee and read Hardee his *Miranda* rights.

13. Hardee received a summons issued to Hardee as "Custodian of Records" and the request sought, among other things: Know-your-customer (KYC) files or other similar records maintained for *anti-money laundering purposes* . . ." (Attached as Exhibit C to the Barnes Decl.) (emphasis added). Upon information and belief, the information sought herein related to and will be used in aid of the grand jury investigation in Florida.

14. First Charter, Bryant and Belks are Third-Party Recordkeepers located within this district under 26 U.S.C. § 7603(b)(2)(F).

15. The First Charter, Bryant and Belks Summonses was not apparently attested as required by 26 U.S.C. § 7603(a).

## ALLEGATIONS

16. Significant evidence reasonably infers that a prosecution referral to the U.S. Department of Justice Tax Division is in effect related to the information sought, or, at a minimum, that the IRS is institutionally committed to making such a referral for prosecution, if not already in effect. This evidence includes the grand jury inquiry in Florida, the "CI Agent" reference in the notes of the revenue agent, the prior summary withdrawal of an earlier summons concerning the same investigation into Hope Masonry from a South Carolina revenue agent, and Special Agent Ripley's continuous communications that the inquiry is for criminal purposes, the sole purpose he has identified to others.

4

17. The IRS failed to follow all required administrative and statutory steps by failing to serve the summonsed party with a true and correct copy of the signed and attested summonses served upon First Charter, Bryant and Belks, as mandated by 26 U.S.C. §§ 7603 and 7609.

18. Agent Ripley knowingly violated the confidentiality requirements of Section 6103 of Title 26 of the Internal Revenue Code by illicitly disclosing the petitioner was under criminal investigation to the banks, businesses, and customers the special agent believed the petitioner relied upon for his livelihood.

19. Additionally, the IRS routinely fails to follow the required administrative steps in a criminal inquiry that predicated the Court's decision in *LaSalle*. Principally, this includes routinely using civil summonses to aid and support a grand jury inquiry, opening a grand jury inquiry without any recommended referral for prosecution in many instances, and denying citizens under inquiry and investigation *Miranda* notices or their administrative conference rights. These are the protocols the IRS assured the Supreme Court they would follow. It was IRS adherence to these protocols that predicated generous use of summonses by criminal investigators while, at the same time, prevented any potential misuse of civil summonses through pursuit of evidence of criminal wrongdoing outside the grand jury process and the rules of criminal procedure. These protocols are infirm and easily evaded under current tax policy administration.

## MEMORANDUM OF LAW IN SUPPORT OF PETITION TO QUASH

The Fourth, Fifth and Sixth Amendments safeguard the rights of the criminally accused from the encroachment of the state. When an agency calls upon the power of the judiciary to coerce disclosures under pain of contempt and circumvent the search warrant protocols and grand jury protections of individuals, the court carefully guards its power of compulsory process

5

against any and all potential misuse or possible abuse. Put simply, "a court may not permit its process to be abused." *See United States v. Powell*, 379 U.S. 48, 58 (1964).

"Congress has provided protection from arbitrary or capricious action by placing the federal courts between the Government and the person summoned." *United States v. Michaud*, 907 F.2d 750, 751 (7th Cir. 1990) (en banc) (quoting *United States v. Bisceglia*, 420 U.S. 141, 151 (1974)). This inter-positional duty and intermediary role requires a court not lend its judicial imprimatur to any administrative summons without a finding of good faith in the agency's conduct and no potential for abuse of the court's process. *See id.* As the Court instructed in *Powell*: "Such an abuse [of process] would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or put pressure on him to settle a collateral dispute, *or for any purpose reflecting on the good faith of the particular investigation.*" *Powell*, 379 U.S. at 58 (emphasis added).

When an interested party challenges enforcement of an IRS summons, under *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the initial burden rests with the government to establish a prima facie showing of good faith in issuing the summons, requiring proof that the IRS has satisfied the following four elements: (1) the investigation is being conducted for a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already in the possession of the IRS; and (4) the administrative steps required by the Internal Revenue Code have been followed. *Conner v. United States*, 434 F.3d 676, 680 (4th Cir. 2006).

A legitimate purpose is information sought and relevant to *civil* tax purposes. *See United States v. Cortese*, 614 F.2d 914, 919 (3rd Cir. 1980). Information is relevant only if it may be probative of the *civil* tax purpose. *See United States v. Richards*, 631 F.2d 341 (4th Cir. 1980) (noting there must be a "realistic expectation" the information sought will be used to "throw light

6

on" the petitioner's civil tax issues). The definition of IRS "possession" of records includes any records the Service can easily access. *See United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973) ("The obligation is upon the Commissioner to demonstrate that the material requested is not within his possession or, that if it is technically within his possession, he has no practical way of obtaining the desired item.") The statutory requirements for issuing a summons include attestation of the summons to protect the party served with its authenticity. *See Henderson v. United States*, 778 F.Supp. 274, 277 (D.S.C. 1991). *But see Kernan v. Internal Revenue Service*, 2007 WL 1288155, *2 (D. Hawai'i) (Slip Copy dated April 30, 2007) (holding that the lack of attestation is an insufficient basis to quash an administrative summons without substantial prejudice) (relying on *Cook v. United States*, 104 F.3d 886, 889 (6th Cir. 1997) (in turn holding that technical violations in serving the summons are only sufficient to quash the summons if prejudice exists)).

Additionally, "the taxpayer may challenge the summons on any appropriate grounds" including any other abuse of the court's process. *United States v. Riewe*, 676 F.2d 418, 420 (10th Cir. 1982) (citing *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)); *see also United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997) (en banc). This is a twin requirement: first, whether the Service is acting in good faith in seeking the information from the summons for a civil purpose without harassment, focusing on the motives of the institution and the individual agent; and second, measuring whether the summons could have the effect of an abuse of process.

To demonstrate good faith, the Service must show it seeks this information to serve their "interest in civil as opposed criminal, remedies." *United States v. Cortese*, 614 F.2d 914, 917 (3rd Cir. 1980). Equally, the Service cannot ask the aid of the court to coerce compulsory process if the agent demonstrates animus or harassment. *Id.* at 921.

7

Where "the sole objective of the investigation is to obtain evidence for use in a criminal prosecution" then "the purpose of the summons [will] be said to violate the Fourth Amendment and enforcement [of the summons] be denied." *United States v. Theodore*, 479 F.2d 749, 753 (4th Cir. 1973); *see also United States v. Lewis*, 604 F.Supp. 1169 (E.D.La. 1985).

As for preventing the effect of enforcement from abusing the court's process, the court must consider the prophylactic effect on investigative conduct by the agency, public confidence in a court's issuance of process under pain of contempt, and the privacy concerns of the individual. "In terms of protection to the individual, a summons submitted to a court for enforcement is at least equivalent to a search warrant." *United States v. Roundtree*, 420 F.2d 845, 851 (5th Cir. 1970). The district court must "limit the invasion of privacy through the judicial scrutiny to which a summons is subject for its enforcement and through the standards enumerated in *Powell* of legitimate purpose, proper procedure, relevance, and refusal to allow abuse of the courts' process." *Id.* It "would be a misuse of the tax summons for the IRS to endeavor to use it to obtain evidence for use in an existing criminal prosecution." *Id.*

The petitioner may stand in the shoes of those not before the court. *See United States v. Equitable Trust Company*, 611 F.2d 492 (4th Cir. 1979) (petitioner "may bring the abuse-of-court-process contention to the District Court's attention and ask the District Court not to ignore the same, even if the abuse complained of involves no violation of any right" of his); *see also United States v. Hamilton Federal Sav. and Loan Ass'n*, 566 F.Supp. 755 (E.D.N.Y.1983).

Discovery is necessary whenever the petitioner must rely on information peculiarly within the knowledge or files of the government. *See United States v. Security Bank & Trust Co.*, 661 F.2d 847, 850 (10th Cir. 1981). Wherever there is an allegation of agent animus or agent harassment then "discovery should be provided." *Cortese*, 614 F.2d at 921, n.12. The

8

same applies to a sufficient allegation of a pending criminal investigation. *See United States v. Genser*, 595 F.2d 146, 152 (3rd Cir. 1979).

The Supreme Court, in fact, presumes the right to discovery prior to any adjudication in summons litigation, notwithstanding the Government's showing on the paper. *Powell*, 379 U.S. at 59. *Powell's* context suggests that after an adequate showing. In *Powell,* the Supreme Court stated: "[t]his [adequate showing by the Government] does not make meaningless *the adversary hearing to which the taxpayer is entitled* before enforcement is ordered." *Id.* (emphasis added). Here, discovery is needed, an evidentiary hearing compelled, and the Summons rightfully quashed for the reasons set out below.

### I.     The Purpose of the Summons is Solely For Criminal Investigatory Purposes in Coordination with an On-Going Grand Jury in Florida, or There is an Institutional Commitment to Refer This Matter to the Department of Justice.

The Supreme Court first warned in *Reisman v. Caplin*, 375 U.S. 440, 448 (1964):

> Furthermore, we hold that in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution.

If there is already a referral or grand jury concerning the same entity at issue, then this precludes summons enforcement. *Michaud*, 907 F.2d at 755. "No summons may be issued . . . with respect to any person if a Justice Department referral is in effect with respect to such person." 26 U.S.C. § 7602(c)(1). That complete bar is not an open door to misuse civil summonses by delaying criminal referrals.

The High Court returned to the same warning a decade later:

> We shall not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution. Such a delay would be tantamount to the use of the summons authority after the recommendation and would permit the Government to expand its criminal

9

Case 3:07-mc-00064-GCM     Document 1     Filed 05/29/07     Page 9 of 16

discovery rights. Similarly, the good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases.

*United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316-17 (1978).

And once again another decade later:

[T]he IRS may not issue a summons once it has recommended prosecution to the Justice Department, nor may it circumvent this requirement by delaying such a recommendation in order to gather additional information. When Congress codified the essence of our holding in sec. 7602(c) it apparently shared our concern about permitting the IRS to encroach upon the rights of potential criminal defendants. The Report of the Senate Finance Committee noted that "the provision is in no way intended to broaden the Justice Department's right of criminal discovery or to infringe on the role of the grand jury as a principal tool of criminal prosecution.

*United States v. Stuart*, 489 U.S. 353, 362-63 (1989).

Put simply, "enforcement can and should be denied when the Service is attempting to exploit its civil investigatory powers as a de facto grand jury." *Michaud*, 907 F.2d at 752.

That is precisely the case here. The summons was issued at the behest of the Charlotte, North Carolina Field Office of the Internal Revenue Service's Criminal Investigation Division. *See* Ex. A. The IRS has likely made a criminal referral regarding Hardee to the United States Department of Justice. "[T]he question whether an investigation has solely criminal purposes must be answered only by an examination of the institutional posture of the IRS." *LaSalle*, 437 U.S. at 316.

Hardee believes that either a referral has been made to the Justice Department or the IRS has made an institutional commitment to seek criminal prosecution based on the following facts: (1) There is already an open grand jury inquiry in Florida into these entities; (2) Hardee was issued *Miranda* warnings by Special Agent Robert F. Ripley, Special Agent Ripley issued a summons to Hardee seeking information related to "money-laundering," and Agent Ripley has focused his public comments concerning the inquiry in documents and statements solely to the

10

criminal purpose of the inquiry; (3) the 2005 Revenue Agent's records indicated that a "CI Agent" (which Hardee believes stands for "IRS Criminal Investigation Special Agent") was involved with the case, and there is no reason for such an extended delay since 2005, except for an institutional commitment to a criminal prosecution already in place; (4) a prior summons concerning these same entities was summarily and suddenly withdrawn upon petitioner's challenge, alleging just such an illicit purpose of that summons only a few months ago; and (5) the two year time period between the end of the civil audit process and the issuance of this summons (and the nineteen other summonses seeking records from other financial institutions around the country), is approximately the time it typically takes for a criminal investigation or a Department of Justice referral to take place.

Alternatively, as *LaSalle*, noted, "the good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice, *regardless of the status of criminal cases.*" *Id.* at 317 (emphasis added). The information sought here clearly will be "information gathering" for the Department of Justice given the ongoing federal grand jury inquiry into these entities in Florida. This, alone and independently, suffices to quash the summons.

## II.  The Court Should Not Reward the Agent's Violation of Basic Confidential Disclosure Laws Through Enforcement of Any Summons in Violation Thereof.

The court protects its judicial process in order to maintain public confidence in the civil investigative process. When an agent's actions would undermine "whatever reservoir of trust remains in citizen taxpayers" and thereby "discourage the cooperation that might resolve matters in a prompt and satisfactory way," then the court should not lend its aid of its compulsory process. *Groder v. United States*, 816 F.2d 139, 144 (4th Cir. 1987). "In cases where the government's action would be an abuse of process, in whatever context, the court's restrictions

11

are not legal error; rather, they are a wise exercise of control." *United States v. Rockwell*, 897 F.2d 1255, 1261 (3rd Cir. 1990).

Any "governmental bad faith" is exactly the kind of "abuse of judicial process that would lead courts to deny enforcement of a summons." *Groder v. United States*, 816 F.2d 139, 144 (4th Cir. 1987). Violations of basic standards of investigatory conduct can equal such bad faith. *See Conner v. United States*, 434 F.3d 676, 683 (4th Cir. 2006) ("violations of the Internal Revenue Manual are relevant to the bad faith inquiry in this case").

Civil summonses for criminal purposes elude key protections of the grand jury process, including prosecutorial control, judicial oversight, grand juror independence, the secrecy protections of Rule 6(e), and the anonymity of grand jury subpoenas not listing the subject of their inquiry. It was with this in mind that Congress placed strict limits on IRS agents disclosing that someone is under criminal investigation, with no exception provided in the statute for disclosure on civil summonses. *See* 26 U.S.C. § 6103.

> An agent may only make such a disclosure provided three requirements are met:
>
> (1) the information sought is "with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of the [Internal Revenue Code]." (2) the information sought is "not otherwise reasonably available"; and (3) it is "necessary to make disclosures of return information in order to obtain the additional information sought."

*Payne v. United States*, 289 F.3d 377, 382 (5th Cir. 2002) (explaining 26 U.S.C. § 6103(k)(6)) (quoting *DiAndre v. United States*, 968 F.2d 1049, 1052 (10th Cir. 1992)).

An agent who discloses the subject matter of the investigation, the target of the investigation and its criminal character on "administrative summonses and letters to third-parties" right "on their face that Payne was under criminal investigation" patently violated the law and such conduct was in evident bad faith. *Payne*, 289 F.3d at 384.

12

"An agent violates the statute, as well as the Internal Revenue Manual, when he or she identifies the subject of his or her investigation." *Snider v. United States*, 468 F.3d 500, 507 (8th Cir. 2006). Such conduct is manifest bad faith:

> As mentioned above, the plain language of the statute prohibits the disclosure of both a taxpayer's identity and whether the taxpayer's return was, is being, or will be examined or subject to other investigation, as both forms of information constitute "return information." Therefore, it cannot be said that a reasonable officer would have failed to understand that such a disclosure would violate a clearly established right of the taxpayer.

*Id.* at 508.

The agent here made no effort or attempt to acquire this information from Hardee prior to issuing summonses, nor other potential sources for such information. Moreover, disclosing the criminal character of the inquiry is rarely if ever necessary, but Agent Ripley volunteered it early and often to more than a dozen institutions and individuals, including all three sources of economic and financial support of the petitioner – customers, workers and lenders. "Examination of agent motive may be necessary to evaluate the good-faith factors of Powell, for example, to consider whether a summons was issued to harass." *LaSalle*, 437 U.S. at 316, n.17.

This egregious and unnecessary conduct alone necessitates quashal.

### III. The IRS Failure to Comply with Statutory Requirements.

The IRS failed to comply with the statutory requirements for issuing a third-party "civil" summons. *See* 26 U.S.C. § 7609(a)(1)-(2) and 26 U.S.C. § 7603. The Internal Revenue Code requires that all persons summonsed be served with an attested copy of the Summons. *See id.* The only copy available to Hardee demonstrates an unattested summons. *See* Ex. A. The issuing officer knew how to attest a summons as evidenced by the attested summons issued to Hardee as "Custodian of Records." *See* Ex. B.

13

"[The] valid purpose for this mandate is to assure the person receiving the summons that what he received was in fact a true copy of the original summons." *See Henderson v. United States*, 778 F.Supp. 274, 277 (D.S.C. 1991).[1] Failure there required quashal, as it does here. *See Henderson*, 778 F.Supp. 274.

IV. **As the IRS No Longer Follows The Referral Process Before Using Grand Juries, Criminal Investigators Should Not Be Allowed the Additional Benefit of Civil Summonses.**

"Future cases may well reveal the need to prevent other forms of agency abuse of congressional authority and judicial process." *LaSalle*, 437 U.S. at 318 n. 20. This is such a case.

The Supreme Court, from its inception, interpreted these set of statutes restrictively to avoid "constitutional consideration" that would otherwise arise. *Reisman*, 375 U.S. at 448, n.8. The Court's Constitutional conforming constructions of the past saved the statute from Constitutional challenge. *See Michaud*, 907 F.2d at 755, n.1 (Coffey, concurring) (necessary to limiting interpretation to summons statute preserve constitutionality of statute). Now, the problem is here. The Court's fear was the "likelihood that discovery would be broadened or the role of the grand jury infringed" by criminal investigative use of civil summonses. *LaSalle*, 437 U.S. at 312.

> Nothing in 7602 or its legislative history suggests that Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation . . . .

*Id.*

"Only after the officials of at least two layers of review have concurred in the conclusion of the special agent does the referral to the Department of Justice take place." *Id.* at 315. The Court

---

[1] As noted above, some courts have determined that attestation is not in and of itself a grounds to quash the summons. *See Kernan*, 2007 WL 1288155 at *2 (relying on *Cook*, 104 F.3d at 889).

14

further relied upon the protections of the innocent taxpayer from publicly humiliating disclosure or criminal inquiry, again accepting the assurances of the IRS they would follow protocol.

> It should also be noted that the layers of review provide the taxpayer with substantial protection against the hasty or overzealous judgment of the special agent. The taxpayer may obtain a conference with the district Intelligence Division officials upon request or whenever the chief of the Division determines that a conference would be in the best interests of the Government. If prosecution has been recommended, the chief notifies the taxpayer of the referral to the Regional Counsel.

*Id.* at 315-16.

These extensive administrative rules and regulations governing the criminal referral process are no longer effectively meaningful. In fact, the Service now routinely discards these internal rules, convening grand juries without any referral in place, and the taxpayer protections are as useful as a house without a foundation or a moat without a bridge or the sworn promise of a candidate for office. With the rationale gone, and the taxpayer protections gone with it, the Service should not be allowed to augment and supplement their criminal investigative tools with this court's compulsory process. The Court limited its "prophylactic restraint" to formal referrals, with other cases decided individually. The goal of not mixing grand juries with civil summonses by awaiting the referral process depended upon the government's assertions that the agent could not invoke grand jury process without the difficult and full referral process through the hierarchy of the Internal Revenue Service and the Department of Justice. *See LaSalle*, 437 U.S. at 313-16.

> As a sister district court held half a century ago in forewarning:
>
> The Constitution of the United States, the statutes, the traditions of our law, the deep-rooted preferences of our people speak clearly. They recognize the primary and nearly exclusive role of the Grand Jury as the agency of compulsory disclosure. That is the inquisitorial body provided by our fundamental law to subpoena documents required in advance of a criminal trial, and in the preparation of an indictment or its particularization. To encourage the use of administrative subpoenas as a device for compulsory disclosure of testimony to be used in

presentments of criminal cases would diminish one of the fundamental guarantees of liberty. Moreover, it would sanction perversion of a statutory power. The power under § 3614 was granted for one purpose, and is now sought to be used in a direction entirely uncontemplated by the lawgivers. The limitations implicit in every grant of power are that it will be used not colorably, but conscientiously for the realization of those specific ends contemplated by the donors of the power.

*United States v. O'Connor*, 118 F.Supp. 248, 250-51 (D. Mass. 1953).

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Hardee respectfully requests: (1) an order from this Court QUASHING the controversial IRS Summons that exists with regard to the Third-Party Recordkeeper named above; or alternatively (2) ordering an evidentiary hearing in this matter to determine whether the Summons was issued in good faith.

Respectfully submitted on this the 25th day of May, 2007.

Bernhoft Law Firm, S.C.
Attorneys for the Petitioner

Robert E. Barnes, Esquire
*Pro Hac Vice* application pending

207 East Buffalo Street, Suite 600
Milwaukee, Wisconsin 53202
(414) 276-3333 telephone
(414) 276-2822 facsimile
rebarnes@bernhoftlaw.com

Case 3:07-mc-00064-GCM   Document 1   Filed 05/29/07   Page 16 of 16